IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

AvalonBay Communities, Inc.
c/o Mr. Richard Koch
2900 Eisenhower Avenue, Suite 300
Alexandria, VA  22314,

    Plaintiff

v.

Washington Metropolitan
Area Transit Authority
600 – Fifth Street, N.W.
Washington, D.C. 20001

    Serve:
    Richard White, General Manager
    600 – Fifth Street, N.W.
    Washington, D.C. 20001,

    Defendant

Case No: CAL03-15976

## COMPLAINT

Comes now Plaintiff AvalonBay Communities, Inc., by and through counsel, Timothy F. Maloney, Jay P. Holland, Cary J. Hansel and the law firm of Joseph Greenwald, & Laake, P.A., and sues the Defendant, Washington Metropolitan Area Transit Authority, and as cause therefore states as follows:

### JURISDICTION & VENUE

1.     This Court has jurisdiction under § 6-102 through § 6-103 of the Maryland Code Annotated, Courts and Judicial Proceedings Article.

2.     Venue is proper in this Court under § 6-201 of the Maryland Code Annotated, Courts and Judicial Proceedings Article.

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

EXHIBIT 2

## PARTIES

3. Plaintiff AvalonBay Communities, Inc. is a publicly-traded Maryland Corporation.

4. Defendant Washington Metropolitan Area Transit Authority (WMATA) is an interstate compact agency of Virginia, Maryland, and the District of Columbia created by Act of Congress. Maryland created and approved the WMATA compact by Chapter 869 of the laws of 1965, first codified as Chapter 41, section 317 of the Annotated Code, 1957 edition, 1965 Cumulative Supplement. The legislation, as amended from time to time, is now contained in Maryland Code (1977, 1993 Repl. Vol.) section 10-201 *et seq.* of the Transportation Article.

## FACTUAL STATEMENT COMMON TO ALL COUNTS

5. Plaintiff AvalonBay Communities, Inc. ("Avalon") is in the business of developing, redeveloping, acquiring and managing luxury apartment communities in the high barrier-to-entry markets of the United States. These markets are located throughout the nation, but primarily in the Northeast, Mid-Atlantic, Midwest, Pacific Northwest and Northern and Southern California regions of the country. As of June 30, 2003 Avalon owned or held an interest in 142 apartment communities containing 42,147 apartment homes in ten states and the District of Columbia, of which ten communities were under construction and two communities were under reconstruction. Avalon's expertise and experience in the field was one of the primary reasons WMATA selected Avalon as the developer for the site.

6. Effective October 9, 2001, Avalon and WMATA entered a term sheet contract under which Avalon was granted the right to develop land adjacent to the WMATA right-of-way at the College Park Metrorail Station in the City of College Park in Prince George's County, Maryland. This development (hereinafter, the "Project") consists of building a

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

mixed-use development project containing approximately 320 luxury apartment units with associated parking and approximately 207,400 gross square feet of commercial space and replacing certain WMATA facilities on the site including the bus loading and circulation areas, short-term parking, and kiss-and-ride facilities. The Project was to be completed on approximately 14.5 acres of real property which Avalon was to purchase from WMATA for approximately $2.4 million. The purchase price is calculated based upon the number of apartment units and FAR of commercial space approved . The contract does not prohibit Avalon from seeking higher densities.

7. The term sheet contract, exclusive of attachments, was 24 pages in length, highly detailed and fully and freely negotiated.

8. The term sheet contract contained all necessary and material terms of the contract and was knowingly and voluntarily executed by both parties without duress.

9. The term sheet contract is a valid and binding contract, enforceable against WMATA.

10. The term sheet contract provided the parties with certain rights and obligations. This contract anticipated the entry of future agreement(s) between the parties in connection with the Project, including a "Sales Agreement" for the purpose of acquiring the real property for the Project.

11. The term sheet contract further provided that "if and to the extent that any provision in this Term Sheet is different from the Final Offer, such provision of this Term Sheet reflects the understanding of the parties."

12. Finally, the term sheet contract also provided that "each of the parties hereto shall negotiate diligently and in good faith to finalize the Sales Agreement, and the other agreements referred to herein, in a manner consistent with the terms and conditions."

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

13. After the term sheet contract was entered, and in reliance on the term sheet contract, Avalon invested more than $300,000 plus a considerable amount of time and has proceeded in good faith to satisfy the requirements of the term sheet including but not limited to attending hearings with WMATA, proceeding with its feasibility study evaluation and seeking a tenant for the commercial property in the Project.

14. The hundreds of thousands of dollars invested in the Project by Avalon benefited WMATA and WMATA knowingly accepted this benefit with the expectation, shared by Avalon, that Avalon would be reimbursed for its expenditures through eventual profits from the Project.

15. During the nearly two years since the term sheet contract was entered, in addition to investing heavily in the Project, Avalon negotiated in good faith with WMATA to finalize the Sale Agreement and other documents contemplated by the term sheet contract.

16. In response to Avalon's repeated good faith attempts at negotiation, WMATA breached the term sheet contract by failing and refusing to make a final offer consistent with the term sheet contract.

17. In fact, the positions asserted during the negotiation process by WMATA differed wildly from the term sheet contract on such basic and material terms as price, financing, the acreage of real property to be purchased, the scope of the work to be done on WMATA facilities, indemnification provisions, and environmental provisions.

18. The term sheet contract provided that Avalon would pay WMATA approximately $2.4 million, while the Defendant thereafter demanded approximately $7.5 million - *more than three times the agreed-upon price.*

19. The term sheet contract provided that the purchasers of the land at issue would be two limited liability companies to be formed by Avalon. Under the term sheet contract,

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

4

Avalon guaranteed only a take-back note for the residential portion of the land only and ultimate completion of the Project. Thereafter, WMATA demanded the elimination of the take-back financing (which was beneficial to Avalon). WMATA further demanded that Avalon guarantee all of the LLCs' obligations. Finally, WMATA refused to enter a final contract unless Avalon agreed to provide a letter of credit in connection with completion of the Project prior to first closing on either the residential or commercial portion of the Project. The terms sheet only requires Avalon to post a payment and performance bond for 50% of the costs of the Project prior to the start of construction. Effectively, Avalon had only $250,000 at risk preclosing under the term sheet contract and WMATA has demanded that Avalon accept much more risk now. All of these financing terms differ materially from those found in the term sheet contract.

20. The request for a proposal and, by reference, the resulting term sheet contract referenced a specific 14.5 acres to be purchased by Avalon from WMATA for the project, but the final offer made by WMATA significantly reduced the acreage at issue and Avalon's ability to maximize the commercial density on the Project. WMATA has indicated it intends to sell the withheld acreage to another developer at a higher price.

21. The term sheet contract specifically lists what existing improvements Avalon must replace for WMATA while WMATA has greatly expanded the scope of the improvements to be replaced extending this list in its final offer from a few specific items to include virtually the entire facility. WMATA has added items such as replacement of the actual metro station and the track itself.

22. Under the term sheet agreement, Avalon had to provide separate payment and performance bonds as security to insure the completion of the replacement of the existing improvements prior to closing in the commercial property. WMATA has since demanded

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

that in addition to the payment and performance bond Avalon escrow funds for replacement of the metro facility at closing on the residential land. This substantially increases the security requirement.

23. The term sheet contract included a warranty that WMATA had good and marketable title to the property to be sold to Avalon and that WMATA would keep and convey title lien-free, while WMATA thereafter demanded contract language which provided that WMATA would not be obligated to remove involuntary liens and may provide an equivalent deed.

24. WMATA has demanded that after the Study Period ends Avalon provide indemnification for environmental claims for the period of time that WMATA has owned the property which is far beyond the provisions of the term sheet contract.

25. Contrary to the provisions found in the term sheet contract, WMATA has demanded a cap of 200,000 square feet of commercial development so that additional density can be developed on the portion of the property withdrawn from the property identified in the term sheet..

26. WMATA has expanded the remedies agreed to in the term sheet contract upon the default by Avalon in obtaining a commercial tenant to include the forfeiture by Avalon of its right to purchase the residential portion of the Project.

27. In addition to violating the term sheet contract, WMATA's conduct violated its own policies and procedures.

28. Projects such as the one at issue are governed by WMATA's "Joint Development Policies and Guidelines."

Joseph
Greenwald
& Laake

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

29.     Section 6.4 of WMATA's Joint Development Policies and Guidelines provides that "Term Sheet provisions are incorporated into a lease or sales agreement with the developer."

30.     Section 7.3.10 of WMATA's Joint Development Policies and Guidelines provides that "Staff will negotiate a final contract which reflects and conforms to the approved Term Sheet."

31.     In this case, WMATA's Joint Development Policies and Guidelines require incorporation of the provisions found in the term sheet into a Sales Agreement.

32.     WMATA violated its own Joint Development Policies and Guidelines by failing and refusing to incorporate the provisions found in the term sheet into a Sales Agreement.

33.     In response to Avalon's repeated good faith attempts at negotiation, WMATA further breached the term sheet contract and violated various common law duties by failing and refusing to negotiate in good faith to finalize the Sales Agreement.

34.     Examples of WMATA's failure to negotiate in good faith to finalize the Sales Agreement include, but are not limited to the following:

    a.     reopening terms already decided;

    b.     demanding commercially unreasonable terms;

    c.     refusing to diligently negotiate by taking months to complete drafts and additional months to respond to requested changes;

    d.     consistently failing to approve reasonable changes to draft contracts which changes do not differ from the term sheet contract; and

    e.     failing to complete the agreements (a guarantee and a commercial lease) which need to be executed with and attached to the final sales contract).

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

7

f.      insisting on a $5.1M purchase price increase before agreeing to further negotiations

35.     Despite its obligations to negotiate in good faith with the Plaintiffs, WMATA has made known its intention to issue another request for proposals to complete the Project through another contractor.

36.     In addition to other damages, Avalon's apparently pending termination from the Project will result in significant damages to Avalon's national reputation.

### COUNT I
**Breach of Contract - Failure to Make Final Offer Consistent with Term Sheet Contract**

37.     The Plaintiff repeats and re-alleges the allegations set forth in the forgoing paragraphs of this Complaint as if fully set forth herein.

38.     The Defendant entered a valid and binding contract (the term sheet contract) with the Plaintiff which provided that "if and to the extent that any provision in this Term Sheet is different from the Final Offer, such provision of this Term Sheet reflects the understanding of the parties."

39.     The term sheet contract required the Defendant to make a final offer for entry of a Sales Agreement reflecting the provisions found in the term sheet contract.

40.     The Defendant breached the term sheet contract by failing and refusing to make a final offer for entry of a Sales Agreement reflecting the provisions found in the term sheet contract.

41.     As a direct and proximate result of the foregoing, the Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial, but not less than $10,000,000 (Ten Million Dollars) plus interest, costs and attorneys fees.

Wherefore, the Plaintiff respectfully requests judgment in an amount to be determined at trial, but not less than $10,000,000 (Ten Million Dollars), plus interest, costs and attorney's

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

fees, or, in the alternative, specific performance of the term sheet contract in the form of a Court order that the parties ratify the sale and development of the subject property pursuant to the terms of the term sheet contract and that WMATA be restrained from issuing or publicizing other requests for proposals in connection with this property.

## COUNT II
### Breach of Contract - Failure to Negotiate in Good Faith

42. The Plaintiff repeats and re-alleges the allegations set forth in the forgoing paragraphs of this Complaint as if fully set forth herein.

43. The Defendant entered a valid and binding contract (the term sheet contract) with the Plaintiff which provided that "each of the parties hereto shall negotiate diligently and in good faith to finalize the Sales Agreement, and the other agreements referred to herein, in a manner consistent with the terms and conditions."

44. The term sheet contract required the Defendant to negotiate in good faith to finalize a Sales Agreement reflecting the provisions found in the term sheet contract.

45. The Defendant breached the term sheet contract by failing and refusing to negotiate in good faith to finalize a Sales Agreement reflecting the provisions found in the term sheet contract.

46. As a direct and proximate result of the foregoing, the Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial, but not less than $10,000,000 (Ten Million Dollars) plus interest, costs and attorneys fees.

Wherefore, the Plaintiff respectfully requests judgment in an amount to be determined at trial, but not less than $10,000,000 (Ten Million Dollars), plus interest, costs and attorney's fees, or, in the alternative, specific performance of the term sheet contract in the form of a Court order that the parties ratify the sale and development of the subject property pursuant to

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

the terms of the term sheet contract and that WMATA be restrained from issuing or publicizing other requests for proposals in connection with this property.

## COUNT III
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

47. The Plaintiff repeats and re-alleges the allegations set forth in the forgoing paragraphs of this Complaint as if fully set forth herein.

48. The relationships between the parties, including, but not limited to, their contractual relationship and the fact that the Plaintiff has spent considerable sums in furtherance of and in reliance on various representations and actions of the Defendant, including, but not limited to, the Defendant's knowing acceptance of the benefits of these funds and the Plaintiff's other efforts, give rise to a covenant between and amongst the parties of good faith and fair dealing.

49. The Defendant owes the Plaintiff the duties of good faith and fair dealing.

50. The Defendant breached its duties to the Plaintiff of good faith and fair dealing by and through the actions outlined above, including, but not limited to, through:

   a. refusing to negotiate in good faith;

   b. refusing to offer or enter into a Sale Agreement reflecting the agreed-upon terms found in the term sheet contract; and

   c. denying the Plaintiffs their rights under Maryland law and under the contracts between the parties.

51. As a direct and proximate result of the Defendant's breach of the covenants of good faith and fair dealing, the Plaintiff was damaged.

52. The Defendant breached the covenants of good faith and fair dealing owed to the Plaintiff intentionally, maliciously, fraudulently and in conscious disregard of the rights of and likelihood of economic injury to the Plaintiff and at all times to further its own economic interests at the expense of the Plaintiff.

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 • Fax 220-1214

53. By reason of the foregoing, the Plaintiff has suffered damages in an amount to be determined at trial, but not less than $10,000,000 (Ten Million Dollars) plus punitive damages in an amount not less than an additional $10,000,000 (Ten Million Dollars), interest, costs and attorney's fees.

Wherefore, the Plaintiff respectfully requests judgment in an amount to be determined at trial, but not less than $10,000,000 (Ten Million Dollars) plus punitive damages in an amount not less than an additional $10,000,000 (Ten Million Dollars), plus interest, costs and attorney's fees.

## COUNT IV
### Declaratory Judgment

54. The Plaintiff repeats and re-alleges the allegations set forth in the forgoing paragraphs of this Complaint as if fully set forth herein.

55. This declaratory judgment action is brought pursuant to Md. Code Ann., Cts. and Jud. Proc. Art. §§3-406 and 3-407 for the purpose of determining questions of actual controversy between the parties and terminating uncertainty and controversy giving rise to this proceeding.

56. The aforesaid actions of the Defendant are unlawful in that the Defendant has breached contractual obligations and common law duties owed to the Plaintiff. In addition, the Defendant has violated its own policies and procedures.

57. The Defendant contends, incorrectly, that its conduct is not unlawful, that it has not violated its obligations to the Plaintiff and that it has not violated its own policies and procedures.

58. There exists an actual controversy regarding a justiciable issue between the Plaintiff and the Defendant within the jurisdiction of this Court, involving whether the

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

11

aforesaid actions of the Defendant are unlawful and involving the rights and responsibilities of all parties to the contract between the Defendant and the Plaintiff.

59. Antagonistic claims are present between the parties. These claims indicate imminent and inevitable litigation.

60. Under section 3-401 through 3-415 of Maryland Code Annotated, Courts and Judicial Proceedings Article, the Plaintiff is entitled to a judgment declaring its rights and responsibilities under the contracts between the parties and further settling the legal relations of the parties under common law and pursuant to the policies and procedures of the Defendant.

Wherefore, the Plaintiff respectfully requests that:

a) the Court declare, order and rule that the Defendant has violated contractual obligations owed to the Plaintiff in failing to negotiate in good faith with the Plaintiff and in failing to make a final offer and enter a contract reflecting the terms of the term sheet contract;

b) the Court declare, order and rule that the Defendant has violated common law duties owed to the Plaintiff in failing to negotiate in good faith with the Plaintiff and in failing to make a final offer and enter a contract reflecting the terms of the term sheet contract;

c) the Court declare, order and rule that the Defendant has violated its own Joint Development Policies and Guidelines by failing and refusing to incorporate the provisions found in the term sheet into a Sales Agreement;

d) the Court enter temporary, preliminary and permanent injunctive relief requiring the Defendant to negotiate in good faith with the Plaintiff, make a final offer and enter a contract reflecting the terms of the term sheet contract between the parties; and

**Joseph Greenwald & Laake**

Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane • Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 • Fax 220-1214

e) the Court enter temporary, preliminary and permanent injunctive relief requiring specific performance of the term sheet contract in the form of a Court order that the parties ratify the sale and development of the subject property pursuant to the terms of the term sheet contract and that WMATA be restrained from issuing or publicizing other requests for proposals in connection with this property.

Respectfully submitted,

JOSEPH, GREENWALD, & LAAKE, P.A.

Timothy F. Maloney
Jay P. Holland
Cary J. Hansel
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200
(301) 220-1212 / Facsimile
Counsel for the Plaintiffs

## JURY DEMAND

The Plaintiff hereby demands a trial by jury.

Cary J. Hansel